**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CARLTON WALKER,

                              Plaintiff,

            v.                                                    No.  9:20-CV-0082
                                                                         (DNH/CFH)

SENECAL and BRIAN BENWARE,

                              Defendants.

_____

**APPEARANCES:**                              **OF COUNSEL:**

CARLTON WALKER
85-A-1559
Franklin Correctional Facility
P.O. Box 10
Malone, New York 12953
Plaintiff, pro se

HON. LETITIA JAMES                            MARK G. MITCHELL, ESQ.
Attorney General for the                      Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224-0341
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

            **REPORT-RECOMMENDATION AND ORDER**[1]

      Plaintiff pro se Carlton Walker ("Plaintiff"), an inmate who was at all relevant times in

the custody of the New York State Department of Corrections and Community Supervision

("DOCCS") at Bare Hill Correctional Facility ("Bare Hill C.F."), brings this action pursuant to

the 42 U.S.C. § 1983 against defendants Correction Officers Richard Senecal ("Senecal")

---

      [1]  This matter was referred to the undersigned for Report and Recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

and Brian Benware ("Benware") for violations of his constitutional rights under the First Amendment.  Dkt. No. 1 ("Compl.").

Presently pending before the Court is Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). <u>See</u> Dkt. No. 32.  Plaintiff opposed Defendants' motion. <u>See</u> Dkt. No. 34.  For the reasons that follow, it is recommended that Defendants' motion be granted in part and denied in part.


## I.  BACKGROUND

The facts are related herein in the light most favorable to Plaintiff as the non-moving party. <u>See</u> subsection II(A) <u>infra</u>. In September 2017, Plaintiff entered "the A side of the messhall for his evening meal" holding legal materials and a medicine bottle.  Compl. at ¶¶ 435-436.  Plaintiff placed his legal materials and medication at the "designated area" at the messhall door, and thereafter, Senecal, the officer "posted" in the messhall, told him that he could not leave his medication with his legal work. <u>Id.</u> at ¶¶ 436, 440.  Plaintiff explained that the medicine bottle was empty. <u>Id.</u> at ¶ 437.  Senecal examined the container and "took the Plaintiff's legal materials outside the messhall and read them, saying he was looking to see if the Plaintiff has other inmates' legal materials with his." <u>Id.</u>

While Senecal was reading the legal materials, he "came across the Plaintiff's Civil Rights Complaint, which was pending in the United States District Court, Northern District of New York, before Hon. Thomas J. McAvoy[.]"  Compl. at ¶ 439.  Senecal "ripped out the first 18 pages of Plaintiff's 88 page[] civil rights complaint[.]" <u>Id.</u> at ¶ 440.  In that complaint, Plaintiff challenged the prison conditions, including conditions in the messhall, as unconstitutional, and identified Acting Commissioner Annucci and Superintendent Yelich as

defendants.  Id.

On October 2, 2017, Senecal told Plaintiff that he was carrying too much legal material into the messhall.  Compl. at ¶ 442.  Plaintiff explained that the legal materials were necessary for a meeting with the parole board.  Id. at ¶ 443.  Senecal reviewed the materials and directed Plaintiff to "take them to his dorm."  Id. at ¶ 445.  Plaintiff complied, and when he returned to the messhall, Senecal told Plaintiff that "he would not be allowed" to eat.  Id.  Plaintiff explained that he had a "medical problem"; Senecal responded that "he did not care" and directed Plaintiff to return to his cell.  Compl. at ¶¶ 446-448.  Plaintiff told Senecal that he intended to file a grievance against him for ripping his complaint, and Senecal responded that, "he would make sure that the Plaintiff end [sic] up dead or in the Box."  Id. at ¶ 449.  When Plaintiff returned to his dorm, he wrote a grievance against Senecal.  Id. at ¶ 451.

On October 3, 2017, Plaintiff spoke with "a grievance representative" and "signed off on the grievance complaint."  Compl. at ¶ 457.  Plaintiff then wrote another grievance complaint against Senecal and "left out the issue dealing with his legal materials" and "focus[ed] the complaint on the fact that Officer Senecal denied him his right to the evening meal[.]"  Id. at ¶ 458.

In March 2017, Plaintiff accepted employment in the Bare Hill C.F. law library as a law clerk.  Dkt. No. 1-3 at 69-70.  On October 10, 2017, Plaintiff brought his legal materials to the law library and asked Benware for copies.  See Compl. at ¶ 460.  Benware examined the documents and advised Plaintiff that "he [would] rather not make them, if the Plaintiff did not have money in his account to cover the cost[.]"  Id. at ¶ 461.  Plaintiff advised that he needed the copies for a court deadline, but Benware refused.  Id. at ¶ 462.

3

Benware exited the law library and "went to an area" where Senecal "was hanging out with other officers." Compl. at ¶ 464. When Benware returned, he summoned Plaintiff to his desk and told him to turn over his legal materials and identification card. See id. at ¶ 465. Plaintiff complied with the directive and waited on a bench. See id. at ¶ 466. When Benware returned, he gave Plaintiff his identification card and legal materials and directed him to return to his cell. See id. at ¶ 467.

Later that evening, at Plaintiff's request, the dorm officer called Benware "to find out if the plaintiff should report to work[.]" Compl. at 470. Benware directed the officer to give Plaintiff a pass to the law library. See id. at ¶ 471. When Plaintiff arrived, Benware told him that "he no longer works in the law library." Id. at ¶ 472.

On October 10, 2017, Benware issued a "fabricated" Misbehavior Report charging Plaintiff with violating Rule 106.10 by refusing a direct order to sweep and mop the law library. See Compl. at ¶ 474; Dkt. No. 1-3 at 74. Plaintiff was found guilty of the charges in the report and sentenced to thirty days loss of recreation, telephone and package privileges, and commissary. See Compl. at ¶ 475. The charges were "affirmed on appeal." Id.

On October 13, 2017, Plaintiff filed a grievance (BRL-14741-17) complaining of being "threatened, assaulted by CO, and retaliation." Dkt. No. 1-3 at 74. On November 17, 2017, the Central Office Review Committee ("CORC") received the grievance. See id. at 73.

On March 23, 2018, Plaintiff entered "the A side of the messhall" and was immediately told by Senecal "to get out." Compl. at ¶¶ 478-479. Once outside, Senecal directed an unidentified non-party officer to "give the plaintiff a rough search." Id. at ¶ 479. The officer directed Plaintiff to "get up against the wall," "kicked the plaintiff's legs wide apart," and

4

subjected Plaintiff to a search "akin to a vicious assault." Id. at ¶ 480. Once the search concluded, Senecal told the officer to "keep Plaintiff on the wall until everyone else was finished going to the messhall." Id. at ¶ 481.

On or around April 5, 2018, Plaintiff was placed on a special diet which required him to eat on the A side of the messhall. See Compl. at ¶ 484. Two weeks later, Senecal saw Plaintiff on the A side of the mess hall and "interrogated" him. Id. at ¶ 485. Senecal asked Plaintiff to show him his "diet card," with the knowledge that "there is no such thing as a diet card," in an attempt to abuse and harass Plaintiff. Id.

On June 23, 2018, Senecal summoned Plaintiff to a booth outside of the activity building. See Compl. at ¶ 486. Senecal directed officers to "give Plaintiff a rough search." Id. at ¶ 487. After the search, Senecal took Plaintiff outside of the booth and directed Plaintiff to place his hands on the booth for "a real rough search, because the other two officers did not do it correctly." Id. at ¶ 488.

On June 29, 2018, as Plaintiff approached the recreation, Senecal was "manning the booth outside the activity building," and directed two unidentified officers to "put the Plaintiff through what he called a rough search[.]" Compl. at ¶¶ 489-490. Senecal directed Plaintiff to return to the dorm and stated, "when the Plaintiff wrote him up, that the Plaintiff should remember [. . .] that whenever he work[s], the Plaintiff will not get any recreation." Id. at ¶ 491.

On January 30, 2019, CORC issued a decision denying Plaintiff's grievance noting:

> CO S . . . denied harassing and threatening the grievant, confiscating his legal work, or having other security staff retaliate against him. CO B . . . states that he issued the grievant a MBR on 10/10/17 for refusing direct orders to do his porter duties instead of legal work, and that he did not make

5

copies for him because he was addressing his non-compliance. The grievant was subsequently removed from his porter assignment in the Law Library effective 10/29/17, and assigned as a block porter on 10/30/17.  It is noted that his allegations of being denied a meal on 10/2/17 were addressed by CORC in BRL 14737-17, which was answered by CORC on 1/30/19.

Dkt. No. 1-3 at 74.

## II.  DISCUSSION[2]

In the Complaint, Plaintiff asserts First Amendment retaliation claims against Senecal and Benware.  See generally Compl.  Defendants move to dismiss the Complaint, arguing Plaintiff's First Amendment claims fail to state a cause of action.  See generally Dkt. No. 32.

## A.  Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted."  When considering such a motion, the court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor."  Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009)) (internal quotation marks omitted).  However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009))

---

[2]  All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Report-Recommendation.

(internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "plausible on its face." Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal quotation marks and citation omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Where a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law....

Treistman, 470 F.3d at 477 (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On

7

occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).

## B.  Retaliation

Courts are to "approach [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]' "  See, e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema, N. A., 534 U.S. 506 (2002)).  A retaliation claim under Section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face.  See Iqbal, 556 U.S. at 678; South Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 110 (2d Cir. 2009).  "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (quoting Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004)), overruled on other grounds by Swierkiewicz, 534 U.S. at 560).

To satisfy the first element of a retaliation claim, a plaintiff must show that he engaged in a protected activity.  See Espinal, 558 F.3d at 128.  It is well settled that the filing of administrative grievances and lawsuits constitutes protected speech.  See Williams v. Ingraham, No. 04-CV-257 (GLS/DRH), 2005 WL 3746222, at *2 (N.D.N.Y. Feb. 3, 2005) ("The [inmate's] conduct at issue—complaints to judicial officials, filing a lawsuit, and

8

grievances—are clearly constitutionally protected rights.") (citing Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002)).

As to the second element of a retaliation claim, in the prison context, "adverse action" is objectively defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Davis, 320 F.3d at 353. "Otherwise, the retaliatory act is simply *de minimis*, and therefore outside the ambit of constitutional protection." Roseboro v. Gillespie, 791 F.Supp.2d 353, 366 (S.D.N.Y. 2011) (quoting Dawes, 239 F.3d at 292-93).

As to the third element of a retaliation claim, the plaintiff bears the burden of establishing a causal connection "sufficient to support the inference 'that the speech played a substantial part' in the [ ] adverse [ ] action." Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000) (quoting Ezekwo v. NYC Health & Hosps. Corp., 940 F.2d 775, 780-81 (2d Cir. 1991)). A plaintiff may establish a causal connection "with circumstantial evidence if it is 'sufficiently compelling[.]'" Kotler v. Donelli, 382 F. App'x 56, 57-58 (2d Cir. 2010) (summary order) (quoting Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003)).

> In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation.

Baskerville v. Blot, 224 F.Supp.2d 723, 732 (S.D.N.Y. 2002).

However, as the Second Circuit explained:

> [. . . ] while we have held that temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation, we have consistently

9

> required some further evidence of retaliatory animus before
> permitting a prisoner to proceed to trial on a retaliation claim.

Faulk v. Fisher, 545 F. App'x 56, 58 (2d Cir. 2013) (summary order) (internal citations and

quotation marks omitted).

### 1.  Claims Against Senecal

Construing the Complaint liberally, Plaintiff alleges that Senecal retaliated against him

in the following respects: (1) in September 2017, Senecal "ripped out the first 18 pages" of

his civil rights complaint; (2) on October 2, 2017, Senecal refused to allow Plaintiff to eat a

meal; (3) Senecal delayed or prevented Plaintiff's entry into the messhall; (4) on five

occasions between September 2017 and June 2018, Senecal subjected Plaintiff to "rough"

pat frisks; and (5) Senecal repeatedly threatened and harassed Plaintiff.  See generally

Compl.

### a.  September 2017 Incident

Defendants move to dismiss Plaintiff's retaliation claim arguing that the act of "ripping

certain pages from a complaint" did not constitute an adverse action.  Dkt. No. 32-1 at 8.

In support of the argument, Defendants cite to the docket report for a civil rights action filed

in June 2017 entitled Walker v. Cuomo, No. 9:17-CV-0650 (N.D.N.Y. Jun. 16, 2017)

("Walker I").  Defendants contend that "the docket report for that action demonstrates that

Plaintiff filed three separate [c]omplaints before the action was dismissed based on

Plaintiff's failure to pay the filing fee."  Consequently, Defendants argue, Plaintiff was not

"prevented from litigating that civil rights action."  Dkt. No. 32-1 at 8.  In response to the

motion, Plaintiff alleges that Senecal's conduct "invalidated that complaint, which was also

the plaintiff's personal property."[3]  Dkt. No. 34 at 5.

Defendants' argument presumes that the "complaint" Plaintiff claims Senecal destroyed was connected to Walker I.  However, that assumption is belied by the facts alleged in the Complaint.  Plaintiff alleges that Senecal "ripped out the first 18 pages of the Plaintiff's 88 pages civil rights complaint, in which Acting Commissioner Annucci, and Superintendent Yelich were named as defendants, challenging the prison's condition as unconstitutional."  Compl. at ¶ 440.  A review of the docket report for Walker I reveals that Walker I did not involve the conditions of Plaintiff's confinement at Bare Hill C.F. nor did it identify Yelich or Annucci as defendants.  See Walker I, Dkt. No. 1.  Therefore, construing the facts in the light most favorable to the non-moving party, the Court cannot reasonably conclude that the "civil rights complaint" that Senecal allegedly "ripped up" was related to Walker I.

However, even if the Court assumes that the complaint in question related to Walker I, the intentional, retaliatory destruction of grievances, legal papers, and other personal property has been held to be sufficient to state a claim for retaliation.  See Chaney v. Koupash, No. 04-CV-136 (LEK/DRH), 2008 WL 5423419, at *10 (N.D.N.Y. Sept. 26, 2008) (citation omitted); Jean-Laurent v. Lane, No. 9:11-CV-186 (NAM/TWD), 2013 WL 600213, at *10 (N.D.N.Y. Jan. 24, 2013), report and recommendation adopted, 2013 WL 599893 (N.D.N.Y. Feb. 15, 2013) ("Destruction of Plaintiff's legal material and documents for his Second Circuit appeal constitutes an adverse action for purposes of the retaliation analysis.").  This is especially true where the plaintiff demonstrates that the defendants'

---

[3]  In his response to the motion, Plaintiff does not confirm or deny that the complaint related to Walker I.

11

conduct was "designed specifically to deter [the] plaintiff's exercise of his constitutional rights through the destruction of his legal papers." Smith v. City of New York, No. 03 Civ. 7576, 2005 WL 1026551, at *3 (citation omitted).

Assuming that Senecal's conduct amounts to an adverse action, to state a retaliation claim, Plaintiff must establish that the conduct was causally related to his protected activity. Construing the Complaint liberally, Plaintiff alleges that Senecal was motivated to retaliate against him because he "challeng[ed] prison officials and prison conditions in the court." Dkt. No. 34 at 5. When a plaintiff files a grievance or lawsuit against one officer and subsequently alleges retaliatory adverse action by another officer, the plaintiff has an elevated burden for demonstrating retaliation because "it is difficult to establish one defendant's retaliation for complaints against another defendant." Guillory v. Ellis, No. 9:11-CV-600 (MAD/ATB), 2014 WL 4365274, at *18 (N.D.N.Y. Aug. 29, 2014) (citing Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009)); Hare v. Hayden, No. 09 Civ. 3135, 2011 WL 1453789, at *4-5 (S.D.N.Y. Apr. 14, 2011) (holding that the plaintiff "fail[ed] to establish that [the defendant] had a motive to retaliate" against him for complaints filed against another corrections officer).

Defendants argue that Senecal was not motivated to retaliate against Plaintiff because "the complaint in question did not assert any claims against Senecal[.]"[4] See Dkt. No. 32-1 at 7. Although it is difficult to establish retaliation for filing a complaint when the adverse action is committed by a defendant who was not the subject of the complaint, Plaintiff has

---

[4] Plaintiff admits that he did not file a grievance against Senecal until after this alleged incident. See Dkt. No. 34 at 3.

pleaded sufficient facts, at the motion to dismiss stage,[5] to show a connection between Senecal and the torn complaint.  As discussed supra, Plaintiff alleges that the complaint involved constitutional claims related to Plaintiff's conditions of confinement at Bare Hill C.F., specifically in the messhall, "a post which Officer Senecal works."  See Compl. at ¶ 440.  Given the fact that Senecal was aware of Plaintiff's complaints about the conditions in the messhall, and Senecal worked in the messhall, it is plausible that Sencal was motivated to retaliate against Plaintiff for his complaint.  Accordingly, the Court recommends that Defendants' motion to dismiss Plaintiff's retaliation claims against Senecal, based upon this incident, be denied.

### b.  Missed Meal/Messhall

Defendants argue that the denial of one meal does not constitute an adverse action. Dkt. No. 32-1 at 8.  Conversely, Plaintiff maintains that he was on such a "special diet" for "medical reasons," and, therefore, Senecal's conduct was meant to deter him from exercising his constitutional rights.[6]  Dkt. No. 34 at 9-10.

 "Courts have repeatedly held that occasional deprivations of food are de minimis and do not rise to the level of adverse actions for purposes of a retaliation claim."  Amaker v. Annucci, No. 14-CV-9692, 2016 WL 5720798, at *5 (S.D.N.Y. Sept. 30, 2016), aff'd 721 F.

---

[5]  The undersigned makes no determination as to whether such claim, in its current state, could survive a properly-supported motion for summary judgment.

[6]  To the extent that Plaintiff argues that Senecal's decision to deny him a meal violated the Eighth Amendment prohibition against cruel and unusual punishment and his Fourteenth Amendment right to due process/equal protection, see Dkt. No. 34 at 10, those claims were not included in the Complaint, and, thus not properly before the Court.  See Grain Traders, Inc. v. Citibank, N.A., 160 F.3d 97, 105 (2d Cir. 1998); see also Retamozzo v. City of New York, No. 07 CIV. 1248, 2007 WL 9622495, at *1 (S.D.N.Y. Dec. 19, 2007) ("Because Plaintiff raises these allegations in his opposition to the motion to dismiss, these allegations are not properly considered by this Court.") (citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998)).

App'x 82 (2d Cir. 2018) (summary order) (citing Hill v. Laird, No. 06-CV-126, 2014 WL 1315226, at *11 (E.D.N.Y. Mar. 31, 2014) (holding that the defendants' "refusal to give [the] [p]laintiff his food" on one occasion "[did] not rise to the level of adverse actions."); see also Snyder v. McGinnis, No. 03-CV-0902E, 2004 WL 1949472, at *11 (W.D.N.Y. Sept. 2, 2004) (holding that a deprivation of meal on two occasions is de minimis and does not state a claim for retaliation).

With respect to Plaintiff's claim that Senecal delayed his entry into the messhall and refused to allow him to sit in the "special diet" area, the Complaint lacks facts suggesting that these incidents were anything other than isolated occurrences. Without additional facts, such as the dates these incidents occurred and their frequency, the claims as pleaded in the Complaint – a "delayed" entry and denial of sitting in the special diet area of the messhall – constitute de minimis conduct and do not amount to adverse action. See Lunney v. Brureton, No. 04 Civ. 2438, 2005 WL 121720, at *21 (S.D.N.Y. Jan. 21, 2005) ("Case law suggests that the isolated or sporadic denial of privileges do not suffice to state a claim of actionable retaliation."); McFadden v. Friedman, No. 9:12-CV-0685 (GTS/CFH), 2015 WL 5603433, at *10 (N.D.N.Y. Sept. 23, 2015) (holding that the loss of one visit to the commissary is de minimis and does not amount to an adverse action). Accordingly, it is recommended that Plaintiff's First Amendment retaliation claims against Senecal be dismissed on this ground.

### c.  Pat Frisks

Defendants argue that Senecal's pat frisks cannot constitute adverse actions because "conducting pat frisks on prisoners is a necessary procedure to insure safety and security

of prisons." Dkt. No. 32-1 at 9.  It is well-settled that "pat frisks, even if conducted for retaliatory reasons, cannot constitute an adverse action as required to support a First Amendment retaliation claim." Amaker v. Fischer, No. 10-CV-0977A, 2014 WL 8663246, at *9 (W.D.N.Y. Aug. 27, 2014); see also Henry v. Annetts, 08 Civ. 286 (LAP), 2010 WL 3220332, at *2 (S.D.N.Y. July 22, 2010) ("pat frisks are an ordinary part of prison life and would not (and do not) deter the average inmate from continuing to exercise his First Amendment rights").  Allegations that an inmate was subjected to "a rough pat frisk" fair no better.  See Morgan v. Luft, 9:15-CV-0024 (GTS/DJS), 2017 WL 9511158, *8 (N.D.N.Y. Jun. 22, 2017); see also Woodward v. Afify, No. 14-CV-00856, 2018 WL 9875253, at *11 (W.D.N.Y. Sept. 28, 2018), report and recommendation adopted, 2019 WL 5394217 (W.D.N.Y. Oct. 22, 2019).

Accordingly, Plaintiff's allegations that Senecal conducted, and directed other officers to conduct, "rough" pat frisks in retaliation for Plaintiff's grievances fails to state a plausible retaliation claim.  Thus, it is recommended that Plaintiff's First Amendment retaliation claims against Senecal be dismissed on this ground.

### d.  Harassment and Threats

To the extent that the Complaint could be read liberally to include separate retaliation claims against Senecal based upon threats and harassment, Defendants argue that the allegations do not state a claim.  Dkt. No. 32-1 at 9.

Verbal harassment and threats are generally not considered conduct "that would deter a similarly situation individual of ordinary firmness of exercising constitutional rights." Cabassa v. Smith, No. 9:08-CV-0480 (LEK/DEP), 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009) (citing Gill, 389 F.3d at 380) (additional citation omitted); see also Hayes v.

15

Dahkle, 16-CV-1368, 2017 WL 9511178, at *7 (N.D.N.Y. Oct. 30, 2017) (Hummel, M.J.)
("[v]erbal harassment absent injury, is generally insufficient to rise to the level of a
constitutional violation").  Verbal threats may constitute adverse action for purpose of a
First Amendment retaliation if the threats are sufficiently specific.  See Ford v. Palmer, 539
F. App'x 5, 6 (2d Cir. 2013) (summary order) (finding that a verbal threat constituted
adverse action where a corrections officer threatened to poison the plaintiff in retaliation for
filing grievances); see also Barrington v. New York, 806 F.Supp. 2d 730, 746 (S.D.N.Y.
2011).  "'The line between de minimis verbal harassment and retaliatory adverse action ...
[hinges] on the specificity and seriousness of the words used.'" Logan v. Graham, No.
9:18-CV-0291 (DNH/ML), 2019 WL 8015209, at *15 (N.D.N.Y. Nov. 26, 2019), report and
recommendation adopted, No. 9:18-CV-291 (DNH/ML), 2020 WL 871197 (N.D.N.Y. Feb.
21, 2020) (quoting Quezada v. Roy, 14-CV-4056, 2015 WL 5970355, at *21 (S.D.N.Y. Oct.
13, 2015)).  "Absent an appreciable injury following in close time to the threat of force [the
defendant's] statement, albeit inappropriate, lack[s] the specificity and seriousness 'to
deter an inmate from exercising his First Amendment rights.'" Id. at *16 (internal citations
and some internal alterations omitted).

    Plaintiff alleges that Senecal "abuse[d] and harass[ed] Plaintiff about a "diet card" and
told Plaintiff that "whenever he work[s], the Plaintiff will not get any recreation."[7]  Compl. at
¶¶ 485, 491.  Even accepting Plaintiff's allegations as true, Senecal's statements do not
qualify as constitutional violations because "harassing comments and hostile behavior do

---

    [7]    In opposition to the motion, Plaintiff claims Senecal "deprived the plaintiff of recreation on a
number of occasions[.]" Dkt. No. 34 at 8.  This claim was not asserted in the Complaint and thus not properly
before the Court.  See Footnote 5, supra.

not constitute adverse actions sufficient to state a retaliation claim." Quezada, 2015 WL 5970355, at *2. Mindful that inmates "may be required to tolerate more than average citizens[ ] before a retaliatory action taken against them is considered adverse," Davis, 320 F.3d at 353, the undersigned concludes that the alleged threats were vague and lacked the specificity and seriousness "to deter an inmate from exercising his First Amendment rights" as no real threat exists. Further, Plaintiff failed to plead a physical injury resulting from these alleged threats. See, e.g., Logan, 2019 WL 8015209, at *16. Accordingly, the undersigned concludes that these alleged remarks are insufficient to establish adverse action.[8]

The undersigned reaches different conclusion with respect to Plaintiff's claim that Senecal told him "that if he []ever put his name on any grievance concerning him ripping out the pages, he would make sure that the plaintiff end[ed] up dead or in the Box." Compl. at ¶ 449. Taking into account the circumstances surround Senecal's threat, and, because "death threats" or threats of physical violence made in retaliation for filing grievances may be sufficient to state a retaliation claim under the First Amendment, Plaintiff has alleged enough to survive Defendants' motion to dismiss. See Lunney, 2005 WL 121720, at *11 (allowing the plaintiff to proceed with retaliation claim based upon threats of physical violence) (collecting cases); Pierce v. Monell, No. 9:06-CV-1290 (LEK/GHL), 2007 WL 2847317, at *8 (N.D.N.Y. Sept. 26, 2007); Morgan, 2017 WL 9511158, at *5 (noting that the "disparity in the caselaw" regarding "the level of specificity

---

[8] In opposition to the motion, Plaintiff cites to the portion of the Complaint wherein he summarized other verbal threats. See Dkt. No. 34 at 6. However, Plaintiff did not allege that Senecal made these verbal threats. Rather, Plaintiff attributes the threats to unidentified officers who are not defendants in this action. Thus, the undersigned declines to consider these other alleged verbal threats.

17

required before a verbal threat is actionable [as a retaliation claim], requires the court to "consider the context in which the[ ] threats were made").

Accordingly, it is recommended that Defendants' motion to dismiss Plaintiff's First Amendment retaliation claims be denied on this ground.

### 2. Claims Against Benware

Plaintiff alleges that Benware refused to make copies of his legal materials, issued a fabricated misbehavior report, and removed Plaintiff from his job in the law library, in retaliation for Plaintiff's grievance against Senecal.[9]  See Dkt. No. 34 at 11-20.  Defendants do not dispute that Plaintiff engaged in protected conduct.  Rather, Defendants contend that Plaintiff failed to plead facts to support the second and third elements of the retaliation analysis.

### a. Adverse Action

Defendants argue that the receipt of the misbehavior report cannot was not an "adverse action" because Plaintiff was found guilty of the charges in the misbehavior report, a decision that was confirmed by the Appellate Division.  See Dkt. No. 32-1 at 10.

Although the filing of a false misbehavior report may constitute an adverse action to satisfy the second element of a retaliation claim, see Gill, 389 F.3d 379, 384, in this instance, the Complaint lacks facts suggesting that the misbehavior report was false. Construing the Complaint liberally, Plaintiff alleges that the misbehavior report was fraudulent because he was employed in the law library as a law clerk, not as a porter, as

---

[9]  In opposition to the motion to dismiss, Plaintiff contends, "Plaintiff was not trying to have Benware make free copies for him.  Instead, he was invoking  Directive #4483." Dkt. No. 34 at 11.  Because Plaintiff did not include this allegation in the Complaint, the issue is not properly before the Court and is not considered.  See n.5, supra.

the misbehavior report suggests.  See Compl. at ¶¶ 521-526.  However, Plaintiff concedes

that he was found guilty of the charges in the misbehavior report and that the disciplinary

determination was affirmed on appeal.[10]  Id. at ¶ 475.  Accordingly, the Court is left with no

basis to infer that Benware fabricated the misbehavior report.  See Boyd v. Doe #1, No.

9:18-CV-1333 (TJM/ATB), 2019 WL 5287973, at *9 (N.D.N.Y. Oct. 18, 2019) (dismissing a

retaliation claim on a 12(b)(6) motion where the plaintiff admitted that he pleaded guilty to

charges in misbehavior report); see also Cusamano v. Sobek, 604 F.Supp. 2d 416, 478

(N.D.N.Y. 2009) (dismissing, sua sponte, retaliation claims based upon a misbehavior

report because the plaintiff conceded that he was convicted of the disciplinary charge and

that the conviction was affirmed on appeal). Therefore, it is recommended that Defendant's

motion to dismiss Plaintiff's First Amendment retaliation claims against Benware based on

the misbehavior report be granted.

Plaintiff also claims that he suffered an adverse action when Benware terminated him

from his job as a law clerk.  See Dkt. No. 34 at 19.  In this regard, Defendants argue that

Plaintiff does not have a liberty interest in a particular job assignment.  See Dkt. No. 32-1

at 9-10.  Although Defendants are correct, courts in this District have held that an inmate's

termination from his job at the law library "likely constitutes an adverse action."  Yunus v.

Jones, No. 9:16-CV-1282 (GTS/ATB), 2017 WL 9511176, at *10 (N.D.N.Y. Aug. 23, 2017),

report and recommendation adopted, 2017 WL 5956762 (N.D.N.Y. Dec. 1, 2017); see also

Woodward v. Lytle, No. 9:16-CV-1174 (NAM/DEP), 2017 WL 9511175, at *6 (N.D.N.Y.

---

[10]  Plaintiff alleges that the "issues concerning the Appellate Division in this case is currently pending before the United States Court of Appeals for the Second Circuit".  Dkt. No. 34 at 14.  Thus, he requests that the Court "reserve decision." These allegations are not included in the Complaint, are not properly before the Court, and, thus, they need not be addressed.  See n.5, supra.

Aug. 15, 2017) (reasoning that the plaintiff's removal from a position in the law library may constitute adverse action for purposes of a First Amendment retaliation claim), report and recommendation adopted, 2017 WL 4221074 (N.D.N.Y. Sept. 22, 2017); see also Henderson v. Vanderwerff, No. 9:13-CV-1537 (MAD/CFH), 2016 WL 660921, at *5 (N.D.N.Y. Feb. 18, 2016) (holding that the termination of the plaintiff's position as a clerk in the library may support a retaliation claim).   On balance, the undersigned concludes that Plaintiff has demonstrated that the loss of his job as law library clerk could amount to an adverse action.  Thus, it is recommended that dismissal of plaintiff's First Amendment retaliation claim based on the loss of his law library employment be denied.

### b.  Causal Connection

Defendants also move to dismiss the retaliation claims against Benware, arguing that Plaintiff did not file a grievance against Benware or engage in any other protected activity directed at Benware prior to the alleged adverse actions.  Dkt. No. 32-1 at 9-10.

The third prong of causal connection may be established circumstantially, provided the plaintiff links the exercise of protected activity with the resulting adverse action.  Construing the Complaint liberally, Plaintiff alleges that Benware retaliated against him for filing grievances against Senecal.  According to the pleading, Plaintiff "wrote" a grievance against Senecal on October 2, 2017, and on October 10, 2017, Benware told Plaintiff that he "no longer works in the law library[.]"[11]

---

[11]  Plaintiff claims he "wrote a grievance" against Senecal on October 2, 2017, related to the ripped complaint, which he "signed off on" the next day.  Compl. at ¶ 451.  Plaintiff also alleges that he wrote a second grievance against Senecal concerning his missed meal but does not state when the second grievance was filed. The documents annexed as exhibits to the Complaint reveal that Plaintiff filed a

As discussed in Part II(B)(1)(a) supra, it is difficult to establish one defendant's retaliation for complaints against another defendant.  Here, Plaintiff has not pleaded facts plausibly suggesting a connection between Benware and the grievances against Senecal. Indeed, the Complaint does not contain sufficient facts to allow the Court to infer that Benware was aware that Plaintiff filed grievances against Senecal.  The only facts connecting Senecal to Benware are the allegations that Plaintiff saw Benware exit the law library to "an area where Senecal was hanging out with other officers."  Compl. at ¶ 464. The Complaint lacks any other facts suggesting a relevant relationship between Benware and Senecal or statements made by Benware that would allow the Court to infer that Benware was motivated by his relationship to Senecal to retaliate.

Although it is undisputed that filing a grievance is protected conduct, Plaintiff does not allege facts from which the Court can reasonably infer that the grievances were related to Benware or formed the basis for Benware's alleged conduct.  See Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing a retaliation claim against a correction officer where the only alleged basis for retaliation was a complaint written against another officer). "[A] Complaint will withstand a motion to dismiss if the Plaintiff alleges 'a chronology of events from which retaliation may plausibly be inferred.'"  Soto v. Iacavino, No. 01 Civ. 5850, 2003 WL 21281762, at *2 (S.D.N.Y. June 4, 2003) (citations omitted).  Here, Plaintiff's allegations fail to state any causal connection between the grievances he filed against Senecal and Benware's conduct.  Thus, Plaintiff has failed to state a retaliation claim against Benware.  See Jean-Laurent, 2013 WL 600213, at *11 (dismissing retaliation

---

grievance complaining of harassment, assault, and retaliation; however, that grievance was not filed until October 13, 2017, which is after the alleged adverse action.

21

claim where the plaintiff failed to show that prison official knew of a complaint he filed against the facility's Chief Medical Officer).

Alternatively, even if the Court assumes that Plaintiff seeks to establish that he engaged in protected conduct based on Benware's review of his legal materials, his claim still fails. Although Plaintiff alleges that Benware "examined" his legal materials, Plaintiff did not plead facts suggesting that the legal materials included lawsuits or other documentation and/or information that could constitute protected activity.

Consequently, given the absence of any facts plausibly suggesting that Benware was aware of Plaintiff's grievances or retaliated against him because of the grievances, Plaintiff fails to state a First Amendment retaliation claim against Benware on that basis. Accordingly, it is recommended that Defendants' motion to dismiss Plaintiff's First Amendment retaliation claims against Benware be granted.

## III.  CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion to dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 32) be **GRANTED** as to the following: (1) First Amendment retaliation claims against Senecal based upon (a) a missed meal, (b) access to the messhall, (c) pat frisks, and (d) verbal harassment claims related to a "diet card" and recreation; and (2) First Amendment retaliation claims against Benware; and it is further

**RECOMMENDED**, that Defendants' motion to dismissed based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 32) be **DENIED** as to Plaintiff's First Amendment retaliation claim against

Senecal based upon the allegations that Senecal destroyed Plaintiff's legal materials and threatened Plaintiff in September 2017; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[12]

Dated: July 19, 2021
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[12]    If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).