**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CARLTON WALKER,

                              Plaintiff,                        9:20-CV-0082
                  v.                                            (AMN/CFH)

SENECAL,

                              Defendant.

_____

**APPEARANCES:**                              **OF COUNSEL:**

Carlton Walker
85-A-155920-82
Franklin Correctional Facility
P.O. Box 10
Malone, New York 12953
Plaintiff <u>pro</u> <u>se</u>

Attorney General for the State of New York      MARK G. MITCHELL, ESQ.
The Capitol                                     Assistant Attorney General
Albany, New York 12224-0341
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff <u>pro</u> <u>se</u> Carlton Walker ("plaintiff"), an inmate who was, at all relevant times, in

the custody of the New York State Department of Corrections and Community Supervision

("DOCCS") at Bare Hill Correctional Facility ("Bare Hill C.F."), brings this action pursuant to 42

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

U.S.C. § 1983, alleging that defendant Correction Officer Richard Senecal ("defendant") violated his constitutional rights under the First Amendment.  Dkt. No. 1 ("Compl.").

Presently pending before the Court is defendant's motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  See Dkt. No. 58.  Plaintiff opposed defendant's motion, Dkt. No. 62, and defendant submitted a reply, Dkt. No. 63.  For the reasons that follow, it is recommended that defendant's motion for summary judgment be granted.

## I.  Background

### A.  Facts

The record herein contains few undisputed facts.  In support of his motion, defendant filed a Statement of Material Facts.  See Dkt. No. 58-8.[2]  As discussed infra, plaintiff failed to properly respond to defendant's Statement of Material Facts.  See Dkt. No. 62-2.  The facts are

---

[2] At the time of the filing of defendant's motion, N.D.N.Y. Local Rule 56.1 provided:

Any motion for summary judgment shall contain a separate Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.

The moving party shall also advise pro se litigants about the consequences of their failure to respond to a motion for summary judgment.  See also L.R. 56.2.

The opposing party shall file a separate Response to the Statement of Material Facts. The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. In addition, the opposing party's Response may set forth any assertions that the opposing party contends are in dispute in a short and concise Statement of Additional Material Facts in Dispute, containing separately numbered paragraphs, followed by a specific citation to the record where the fact is established.

related herein in the light most favorable to plaintiff as the nonmoving party.  See Subsection

II(A)(1), infra.

On an unspecified date in September 2017, plaintiff sought to carry a "big stack" of legal

materials in a net bag into the messhall.  Dkt. No. 58-2 at 59-60.  Defendant, standing at the

entrance to the messhall, read through plaintiff's legal materials to see if plaintiff had other

inmates' legal materials in his possession.  See Compl. ¶ 435, 437.  While reading the legal

materials, defendant "came across the plaintiff's civil rights complaint, which was pending in the

United States District Court, Northern District of New York, before Hon. Thomas J. McAvoy,

Senior United States District Judge." Id. ¶ 439.  In that case, plaintiff was "challenging the prison

condition and also . . . [his] claim of innocence was in it too."  Dkt. No. 58-2 at 65, 71.  "Officer

Senecal ripped out the first 18 pages of plaintiff's 88 page[] Civil Rights Complaint, in which

Acting Commissioner Annucci, and Superintendent Yelich are named as defendants,

challenging the prison's condition as unconstitutional, including the Messhall, a post which

Officer Senecal works."  Compl. ¶ 440.  Plaintiff testified that the document defendant allegedly

partially destroyed was an amended complaint that plaintiff intended to file in the civil rights case

before Judge McAvoy.  See Dkt. No. 58-2 at 71-72, 74.  Further, plaintiff testified that "some of

[the complaint] was talking about the way the food [was] served" at his correctional facility, but

"it's not just the mess hall, but a lot of it was dealing with the mess hall." Dkt. No. 58-2 at 81.

After the alleged destruction of plaintiff's legal papers, plaintiff told defendant that "he

would be filing a grievance against [defendant], and about the fact that [defendant] ripped out

Page 1 through 18 of [plaintiff's] 88 Page[] Civil Rights Complaint."  Compl. ¶ 449.  "[Defendant]

told the plaintiff that if [plaintiff] []ever put [defendant's] name on any grievance concerning

[defendant] ripping out the pages, [defendant] would make sure that the plaintiff end[ed] up

dead or in the Box." Id.

Defendant asserts that he "did not confiscate, destroy, or remove any of Walker's legal

materials" nor did he ever "threaten or harass [plaintiff], verbally or otherwise," including never

using "abusive language toward [plaintiff] or engage in retaliation against him."  Dkt. No. 58-6 ¶ 6-7.

## B.  Procedural History

In January 2023, plaintiff commenced this action.  See Compl.  Following an initial review of the complaint, the Court determined that the only claims surviving review and requiring a response were the First Amendment retaliation claims against defendants Senecal and Benware.  See Dkt. No. 6.  Defendants Senecal and Benware thereafter filed a motion to dismiss.  See Dkt. No. 32.  In August 2021, the Court dismissed several claims, including all claims against defendant Benware.  See Dkt. No. 42.  On May 27, 2022, defendant Senecal filed this motion pursuant to Fed. R. Civ. P. 56 seeking summary judgment and dismissal of all claims.  See generally Dkt. No. 58.

## II.  Discussion[3]

Plaintiff asserts First Amendment retaliation claims against Senecal.  See generally Compl.  Defendant argues that plaintiff cannot demonstrate retaliation insofar as he cannot raise a triable issue of fact regarding (1) a causal connection between the alleged protected activity and the alleged retaliatory act, and (2) the existence of an adverse action.  See Dkt. No. 58-7.  Defendant claims, in the alternative, that he is entitled to qualified immunity.  Id.

### A.  Legal Standards

#### 1.  Motion for Summary Judgment

A motion for summary judgment may be granted if there is no genuine issue of material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and

---

[3] Copies of all unpublished decisions cited by the Court in this Report-Recommendation & Order, unless otherwise noted, have been provided to plaintiff.

affidavits which support the motion.  See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as

determined by substantive law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving

party.  See Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

        The party opposing the motion must set forth facts showing a genuine issue for trial.

See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  For a court to

grant a motion for summary judgment, it must be apparent that no rational finder of fact could

find in favor of the non-moving party.  See Gallo v. Prudential Residential Servs., Ltd. P'ship, 22

F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

        Where, as here, a party seeks judgment against a pro se litigant, a court must afford the

non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d

Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to
> special solicitude, that a pro se litigant's submissions must be construed liberally,
> and that such submissions must be read to raise the strongest arguments that
> they suggest. At the same time, our cases have also indicated that we cannot
> read into pro se submissions claims that are not consistent with the pro se
> litigant's allegations, or arguments that the submissions themselves do not
> suggest; that we should not excuse frivolous or vexatious filings by pro se
> litigants; and that pro se status does not exempt a party from compliance with
> relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed

Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("on occasions too numerous to count, we have

reminded district courts that when [a] plaintiff proceeds pro se, [. . .] a court is obligated to

construe his pleadings liberally.") (internal quotation marks and citations omitted); see also

Young v. N.Y.C. Dep't of Educ., No. 09-CV-6621, 2010 WL 2776835, at *5 (S.D.N.Y. July 13,

2010) (noting that the same principles apply to briefs and opposition papers filed by pro se

litigants).  "However, a pro se party's 'bald assertion,' completely unsupported by evidence, is

not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

## 2.  N.D.N.Y. Local Rule 56.1

In support of his motion, defendant filed a Statement of Material Facts. See Dkt. No. 58-8. Local Rule 56(b) requires that a party opposing summary judgment must file a response to the movant's Statement of Material Facts, "admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs." N.D.N.Y. L.R. 56(b). "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." Id. (emphasis omitted).

Here, in response to defendant's motion for summary judgment, plaintiff filed a document entitled "Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment." See generally Dkt. No. 62-3. This document is not properly responsive to defendant's statement of material facts because it does not admit or deny defendant's "assertions in a short and concise statement, in matching numbered paragraphs." N.D.N.Y. L.R. 56(b); See generally Dkt. No. 62-3. Instead, this document contains arguments of law, a reiteration of the facts plaintiff set forth in the complaint, new claims not previously raised in the complaint, and rearguments of claims that were previously dismissed. See generally Dkt. No. 62-3. The reiterated facts are not cited to locations in the record. Id.

Defendant argues that because plaintiff failed to support his denials of defendant's statement of material facts with specific citations to the record, defendant's motion for summary judgment should be granted in its entirety. See Dkt. No. 63 at 1-3. The undersigned is not required to "perform an independent review of the record to find proof of a factual dispute." Prestopnik v. Whelan, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (citing Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470-71 (2d Cir. 2002)). Although the Local Rules provide that the Court shall deem admitted any facts that the nonmoving party fails to "specifically controvert," and pro se plaintiffs are expected to abide by the Local Rules, pro se plaintiffs are also afforded

special solicitude in this District and Circuit.  See N.D.N.Y. L.R. 56.1(b); see also subsection

II(A)(1) supra.  Accordingly, in deference to the plaintiff's pro se status, the Court will

independently review the record when evaluating defendant's motion for summary judgment,

and "treat [plaintiff's] opposition as a response to" defendant's Statement of Material Facts.

Johnson v. Lew, No. 1:13-CV-1072 (GTS/CFH), 2017 WL 3822047, at *2 (N.D.N.Y. Aug. 30,

2017) ("Out of special solicitude to [the p]laintiff as a pro se civil rights litigant, however, the

Court will treat his opposition as a response to [the d]efendant's Rule 7.1 Statement . . . ."

(footnote omitted)); see Perry v. Ogdensburg Corr. Fac., No. 9:10-CV-1033 (LEK/TWD), 2016

WL 3004658, at *1 (N.D.N.Y. May 24, 2016) ("[A]lthough [p]laintiff failed to respond to the

statement of material facts filed by [d]efendants as required under Local Rule 7.1(a)(3), the

Court would invoke its discretion to review the entire record when evaluating the parties'

respective Motions for summary judgment.").

## B.  Retaliation Claims

Plaintiff claims that in September 2017, defendant retaliated against him for filing an

amended complaint in plaintiff's federal civil rights case by destroying a portion of plaintiff's legal

materials from that case and threatening him.  See generally Compl.  More specifically, plaintiff

argues that defendant threatened plaintiff that he if were to grieve defendant's destruction of his

legal materials, plaintiff would end up dead or in "the box."  Id. at ¶ 449.

To establish a First Amendment retaliation claim under Section 1983, a plaintiff must

show: "(1) that the speech or conduct at issue was protected, (2) that the defendant took

adverse action against the plaintiff, and (3) that there was a casual connection between the

protected speech and the adverse action."  Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009)

(internal quotation marks and citations omitted).  "[I]n the prison context . . . adverse action" is

"defined . . . objectively[ ] as retaliatory conduct that would deter a similarly situated individual of

ordinary firmness from exercising . . . constitutional rights."  Gill v. Pidlypchak, 389 F.3d 379,

381 (2d Cir. 2004) (internal quotation marks and citation omitted).  "[T]his objective test applies

even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." Id.  In assessing adverse action, a court is to "look to the specific circumstances in which retaliation claims arise, 'bearing in mind that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse.'" Hayes v. Dahlke, 976 F.3d 259, 272 (2d Cir. 2020) (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)).  A plaintiff "must first show that the "protected conduct was 'a substantial or motivating factor in the prison officials' disciplinary decision[.]" Hayes, 976 F.3d at 272 (quoting Holland v. Goord, 758 F.3d 215, 225 (2d Cir. 2014)).

With respect to the third element of the test, although "'[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action[,]' [s]uch circumstantial evidence of retaliation, . . . without more, is insufficient to survive summary judgment." Roseboro v. Gillespie, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011) (quoting Espinal, 558 F.3d at 129).  A plaintiff may establish a causal connection "with circumstantial evidence if it is 'sufficiently compelling[.]'" Kotler v. Donelli, 382 F. App'x 56, 57-58 (2d Cir. 2010) (summary order) (quoting Bennett v. Goord, 343 F.3d 133, 139 (2d Cir. 2003).

> In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation.

Baskerville v. Blot, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (quoting Colon, 58 F.3d 865, 872-73 (2d Cir. 1995).

Where the plaintiff makes the appropriate showing of retaliation, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct." Brooks v. Rock, No. 9:11-CV-1171 (GLS/ATB), 2014 WL 1292232, at *18 (N.D.N.Y. Mar. 28, 2014) (citation omitted); see Scott v. Coughlin, 344 F.3d 282, 287-88 (2d

Cir. 2003) ("Regardless of the presence of retaliatory motive, . . . a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred.") (italics omitted).

"[P]risoner retaliation claims are easily fabricated, and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration."  Bennet v. Goord, 343 F.3d at 137 (internal quotation marks and citations omitted).  Accordingly, the Second Circuit requires courts to "examine prisoners' claims of retaliation with skepticism and particular care."  Colon, 58 F.3d at 872 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).  Thus, "a plaintiff asserting such a claim bears a heightened burden of proof and must plead the claim with particularity."  Green v. Phillips, No. 04-CV-10202 (TPG), 2006 WL 846272, at *3 (S.D.N.Y. Mar. 31, 2006) (citing Brown v. Middaugh, 41 F. Supp. 2d 172, 191 (N.D.N.Y. 1999) (additional citation omitted)).  Consequently, a plaintiff must set forth non-conclusory allegations to sustain a retaliation claim.  See id. at *3; see also Williams v. Goord, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) ("In recognition of the reality that retaliation claims can be fabricated easily, plaintiffs bear a somewhat heightened burden of proof, and summary judgment can be granted if the claim appears insubstantial.") (internal quotation marks and citation omitted).  Allegations, although specific, "may still be deemed conclusory if [they are] (1) largely unsubstantiated by any other direct evidence and (2) so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."  Smith v. Woods, No. 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 (N.D.N.Y. Apr. 24, 2006) (internal quotation marks, citations, and footnote omitted).

As for the first prong, it is well settled that the filing of administrative grievances and lawsuits constitutes protected speech.  See Williams v. Ingraham, No. 04-CV-257 (GLS/DRH), 2005 WL 3746222, at *2 (N.D.N.Y. Feb. 3, 2005) ("The [inmate's] conduct at issue—complaints to judicial officials, filing a lawsuit, and grievances—are clearly constitutionally protected rights.")

(citing <u>Morales v. Mackalm</u>, 278 F.3d 126, 131 (2d Cir. 2002), <u>abrogated on other grounds by</u> <u>Fabricio v. Annucci</u>, 790 F. App'x 308 (2d Cir. 2019)).  By demonstrating that he had commenced a lawsuit that was "pending in the United States District Court, Northern District of New York, before Hon. Thomas J. McAvoy, Senior United States District Judge," plaintiff has carried his burden of identifying evidence from which a jury could conclude that he engaged in protected activity.  Compl. ¶ 439.

As both allegations -- defendant's destruction of plaintiff's legal materials and threats made to plaintiff – arise out of plaintiff's filing of a lawsuit "pending in the United States District Court, before Hon. Thomas J. McAvoy," the undersigned determines that plaintiff has sufficiently demonstrated protected activity.  <u>Id.</u>

### 1.  Destruction of Legal Materials

Plaintiff claims that defendant retaliated against him for his protected activity by destroying his legal papers.  <u>See</u> <u>generally</u> Compl.  Plaintiff claims that these legal papers were connected to "[p]laintiff's Civil Rights Complaint, which was pending in the United States District Court, Northern District of New York, before Hon. Thomas J. McAvoy, Senior United States District Judge."  Compl. ¶ 439.   Plaintiff claims that defendant was motivated to retaliate against him because in this lawsuit, plaintiff "challeng[ed] prison officials and prison conditions in the court."  Dkt. No. 34 at 5.

Plaintiff bears the burden of demonstrating that "the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff."  <u>Gayle v. Gonyea</u>, 313 F.3d 677, 682 (2d Cir. 2002) (citing <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996)).

### a.  Adverse Action

Plaintiff's protected conduct notwithstanding, he has failed to raise a triable issue of material fact as to the remaining elements of his retaliation claim.  In the context of a summary judgment motion, "a pro se party's bald assertion, unsupported by evidence, is not sufficient"; the plaintiff must present some evidence suggesting that the defendant took adverse action

against him.  Cole v. Artuz, No. 93-CV-5981, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999)

(citing Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)) (internal quotations and additional

citations omitted).  Plaintiff has failed to produce sufficient evidence identifying any discernable,

adverse action that defendant took against him.

     Plaintiff alleges that "defendant invalidated [plaintiff's] complaint, which was also

[plaintiff's] personal property" by ripping out the first eighteen pages of the document's eighty-

eight pages.[4]  Dkt. No. 34 at 5; see also Compl. at ¶ 440.  This allegation is insufficient to create

a triable issue of fact.  See Colon, 58 F.3d at 873 (mere allegation that the inmate plaintiff sent

letter to superintendent of prison complaining that contraband had been planted in his cell prior

to prisoner's hearing, and that superintendent did not investigate, was not sufficient to create a

triable issue of fact).  First, it is unclear what plaintiff means by "invalidated."  Dkt. No. 34 at 5.

Applying special solicitude, the undersigned infers that plaintiff is arguing that his lawsuit that

was then "pending in the United States District Court" was somehow negatively impacted from

the partial destruction of his legal papers.  Compl. ¶ 439.  However, plaintiff's allegations are too

vague and conclusory to defeat summary judgment.  The only information that plaintiff has

provided regarding this document is that it is a complaint arising out a "civil rights [action], which

was pending in the United States District Court, Northern District of New York, before Hon.

Thomas J. McAvoy, Senior United States District Judge" in which "Acting Commissioner

Annucci, and Superintendent Yelich are named as defendants, challenging the prison's

condition as unconstitutional, including the Messhall, a post where Office Senecal works."

Compl. ¶¶ 439. 440.

---

[4] In plaintiff's opposition to defendant's motion for summary judgment, plaintiff, for the first time, provides slightly more detail to his claim of adverse action, stating that he "re-wrote the complaint in which he included the allegations which were missing, but before he was able to mail it off to the court to replace the one which was filed on September 11, 2017, Defendant Senecal read it and ripped out the first 18 pages."  Dkt. No. 62-3 at 17.  Thus, it appears plaintiff is contending that he was in the process of drafting an amended complaint and that defendant ripped out the first eighteen pages of the amended complaint before he submitted it to the Court.

Although the Court, in the July 19, 2021, Report-Recommendation & Order, Dkt. No. 31 at 11, hypothesized that the complaint to which plaintiff refers may arise from the case, Walker v. Cuomo, No. 9:17-CV-650 (TJM/DJS) (N.D.N.Y. June 16, 2017), plaintiff has not stated as such nor confirmed this suggestion.  See Dkt. No. 58-7 at 10.  However, even if this is the case, plaintiff fails to explain how the destruction of the first eighteen pages of an amended complaint negatively impacted him such that the Court can assess whether it amounts to adverse action. He does not contend: that he was unable to proceed on specified claims or against certain defendants specifically because Sencal allegedly destroyed the first eighteen pages of an amended complaint (or proposed amended complaint); that, due to defendant's destruction of a portion of his legal papers, he requested from the Court additional time to re-write and submit the amended complaint but was denied additional time to file an amended complaint, which prevented him from proceeding on certain claims or against certain defendants; nor does he even explain why he was be unable to re-write the first eighteen pages and submit those to the Court or commence a new action involving any claims or defendants contained within those pages.[5]  Although not determinative given the lack of information plaintiff has provided to confirm that Walker v. Cuomo is the case in question, as defendant points out, even if the case is Walker v. Cuomo, a review of that case's docket reveals that on September 11, 2017, plaintiff did file an amended complaint naming the Superintendent and Commissioner.  See Dkt. No. 58-7 at 11 n.7.

Plaintiff's bare allegation of "invalidat[ion]" to his civil rights complaint is vague and conclusory and insufficient to amount to a demonstration of adverse action.  As plaintiff's conclusory, unsupported allegations of adverse action fail to create a material question of fact, it is recommended that summary judgment be granted with respect to plaintiff's claim that defendant destroyed his legal materials in violation of the First Amendment.  See Hare v.

---

[5]  The undersigned is not concluding that if plaintiff made such arguments, his claim would be successful in defeating summary judgment.

Hayden, No. 9-CV-3135 (RWS), 2011 WL 1453789, at *3 (S.D.N.Y. Apr. 14, 2011) ("Conclusory

allegations of retaliation are not sufficient . . . .") (citation omitted).

### b. Causal Connection

Even if, arguendo, plaintiff had established a material question of fact as to adverse action,

summary judgment must be granted because no reasonable trier of fact could conclude that

plaintiff has demonstrated an adequate causal connection between his protected activity and

the alleged destruction of his legal papers.

To demonstrate causation, a plaintiff's allegations must be "sufficient to support the

inference that the speech played a substantial part in the adverse action." Diesel v. Town of

Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000) (quotation marks and citation omitted). "[I]n

considering whether there is a causal connection between the protected speech and the

adverse action, a court may consider a number of factors, including any statements made by

the defendant concerning his motivation and the temporal proximity between the protected

activity and the defendant's adverse action." Blount v. Williams, No. 5:22-CV-582 (GTS/TWD),

2022 WL 3109585, at *4 (N.D.N.Y. June 29, 2022), report and recommendation adopted, 2022

WL 3100556 (N.D.N.Y. Aug. 4, 2022) (citation and quotation marks omitted).

"Retaliation is not 'reasonably inferred' where a plaintiff's protected speech does not involve

the defendant alleged to have retaliated against him." Coleman v. Racette, No. 9:18-CV-390

(MAD/CFH), 2021 WL 4312392, at *9 (N.D.N.Y. May 27, 2021) (citing Wright v. Goord, 554 F.3d

255, 274 (2d Cir. 2009)).  "Retaliation claims have been dismissed when they are supported

only by conclusory allegations that the retaliation was based upon complaints against another

officer." Jones v. Fischer, No. 9:10-CV-1331 (GLS/ATB), 2013 WL 5441353, at *21 (N.D.N.Y.

Sept. 27, 2013) (first citing Hare, 2011 WL 1453789, at *4) ("As a general matter, it is difficult to

establish one defendant's retaliation for complaints against another defendant.") (then citing

Wright, 554 F.3d at 274) (dismissing retaliation claim against a corrections officer when the only

alleged basis for retaliation was a complaint about a prior incident involving a different, nonparty

13

corrections officer).  However, in some cases, "causation may be established even if a

prisoner's protected conduct was not directed at the defendant."  Kotler v. Boley, No. 21-CV-

1630, 2022 WL 4589678, at *2 (2d Cir. Sept. 30, 2022) (citing Davis, 320 F.3d at 354)).

> While a plaintiff who "alleges retaliatory adverse action by one officer for a
> grievance filed against another officer . . . faces a heightened burden of
> establishing a causal connection," this does not necessarily bar a retaliation
> claim where there are indications of "a retaliatory purpose - i.e., that the [officer's
> conduct] was meant to penalize [the plaintiff] for bringing past grievances, and to
> dissuade future grievances."  Vincent v. Sitnewski, 117 F. Supp. 3d 329, 338-39
> (S.D.N.Y. 2015) (alterations and internal quotation marks omitted). See also
> Henderson v. Vanderwerff, No. 9:13-CV-1537 (MAD/CFH), 2016 WL 660921, at
> *4 (N.D.N.Y. Feb. 18, 2016).

Moreau v. Ellsworth, No. 9:20-CV-124 (DNH/ATB), 2021 WL 3813172, at *11 (N.D.N.Y. July 15,

2021), report and recommendation adopted, No. 9:20-CV-124, 2021 WL 3793772 (N.D.N.Y.

Aug. 26, 2021), reconsideration denied, No. 9:20CV-0124 (DNH/ATB), 2021 WL 5332168

(N.D.N.Y. Nov. 16, 2021)

   Here, even giving plaintiff every reasonable inference, plaintiff fails to clearly establish that

defendant had a motive to retaliate against plaintiff due to his claims in the civil rights lawsuit

before Judge McAvoy.  Plaintiff has not proffered any evidence showing that defendant was

ever named as a defendant in the complaint/case in question.  Although, as discussed above,

the fact that the complaint was related to a lawsuit against others is not a bar to plaintiff's

retaliation claim, plaintiff still must show "indications of a retaliatory purpose."  Moreau, 2021 WL

WL 3813172, at *11 (citation omitted).

   First, to the extent plaintiff argues that defendant retaliated against plaintiff for filing a lawsuit

challenging the conditions of the correctional facility and/or the mess hall, plaintiff fails to create

a material question of fact that defendant knew the contents of the complaint.  Plaintiff alleges

only that defendant saw the names of the superintendent and the commissioner on the

complaint.  Plaintiff alleges that defendant initially looked through his legal materials "to see if

the plaintiff ha[d] other inmates' legal materials with his[,]" which defendant concedes.  Compl. ¶

437; see also Dkt. No. 58-6 ¶ 6 ("I briefly checked Walker's bag to determine whether the legal

materials were his."). However, plaintiff's claim that defendant was aware of the content of the claims regarding the Bare Hill Correctional Facility mess hall is unsupported by his testimony. See Dkt. No. 58-2 at 65. Plaintiff testified that defendant "came across my case where I was challenging the prison condition and also – not just the prison condition, but also my claim of innocence was in it too. And then he *saw* the Superintendent name in it and the Commissioner name was in it also.") (emphasis added). However, even accepting as true plaintiff's claim that defendant fully read plaintiff's legal materials and was aware of both the named defendants and the legal claims stated therein, the record lacks evidence demonstrating that defendant would be motivated to retaliate against plaintiff based on plaintiff's filing of that lawsuit or any of the allegations within the amended complaint, even though defendant "worked" with/for the Superintendent or Commissioner or worked in/near the mess hall. See generally Comp. As defendant makes clear, he did not work in the mess hall and was not responsible for the conditions of the mess hall. He was stationed at the door outside of the mess hall, where his duties involved "supervising the inmates entering and leaving the mess hall." Dkt. No. 58-6 at 2.

Second, to the extent plaintiff may be suggesting defendant retaliated against plaintiff for bringing a lawsuit naming the commissioner or superintendent as defendants, as laid out, supra, allegations that a defendant retaliated against a plaintiff for claims made against others is not a bar to a retaliation claim, there must be "indications of 'a retaliatory purpose - i.e., that the [officer's conduct] was meant to penalize [the plaintiff] for bringing past grievances, and to dissuade future grievances." Moreau, 2021 WL 3813172, at *11. Although plaintiff contends that defendant told him that if he grieved the destruction of legal materials, he'd end up "dead or in the box", plaintiff does not claim that defendant made any statement that he was destroying the amended complaint because plaintiff was suing the commissioner or superintendent. Plaintiff's bare allegation that defendant destroyed the legal materials because plaintiff named the commissioner and superintended as defendants is too conclusory to defeat summary judgment and does not rise to the level of .. . .

Third, plaintiff's testimony contradicts his complaint as to defendant's alleged motive in destroying the legal materials. In plaintiff's deposition, when asked whether defendant, at the time of the alleged incident, said anything about why he confiscated the pages, plaintiff responded, "[defendant] took them because I was challenging the prison condition and [it had] the Commissioner['s] name on it and the Superintendent['s] name" and "[defendant] said that you're not supposed to be coming here using the law library to . . . file a lawsuit against the . . . Superintendent and the Commissioner and challenging anything about . . . the prison condition."[6]  Dkt. No. 58-2 at 84-85.  However, plaintiff further testified that *"[defendant's] main thing [was]* that I shouldn't be using the law library to challenge anybody . . . challenge the prison condition, to put the Superintendent name in anything or the Commissioner because when I worked in the law library I [was] supposed to be assisting other inmate[s,] not working on my case."  Id. at 78 (emphasis added).  In his testimony, plaintiff suggests that defendant's motivation to destroy his legal materials was not merely seeing the Superintendent and Commissioner's name on the complaint; rather, that plaintiff was not supposed to have his personal legal materials on him because, as a law library employee, plaintiff was "supposed to be assisting other inmate[s]."  Dkt. No. 58-2 at 78.  Plaintiff does not attempt to allege or support an argument stating that defendant's destruction of plaintiff's legal materials as retaliation for plaintiff's working on his own legal case instead of assisting *other* inmates, would amount to a First Amendment violation.

---

[6] In plaintiff's opposition to defendant's motion for summary judgment, plaintiff also alleged that defendant was motivated to retaliate because "plaintiff was verbally protesting about his reading the plaintiff's legal materials and ripping out the first 18 pages of plaintiff's complaint."  Dkt. No. 62-3 at 18.  However, "[a]n opposition to a summary judgment motion is not the place for a plaintiff to raise new claims."  Lyman v. CSX Transp., Inc., 364 F. App'x 699, 701 (2d Cir. 2010) (internal quotation marks omitted).  Further, this allegation makes no legal sense.  Under this version of events, plaintiff suggests that defendant was motivated to retaliate against plaintiff after plaintiff verbally complained about defendant ripping out the eighteen pages of the complaint.  Since plaintiff is stating that his complaining occurred after the ripping out of pages, this fully defeats any argument that the complaining was motivation for defendant's conduct, which already occurred.  Accordingly, even if the undersigned considers this new argument, it is without force.

In sum, plaintiff has not demonstrated that defendant had a motive to retaliate against plaintiff for his claims against other defendants. His conclusory and speculative allegations are insufficient to support "an inference of a causal connection between" the protected conduct and the alleged destruction of plaintiff's legal materials.  See Baskerville, 224 F. Supp. 2d at 732; Hare, 2011 WL 1453789, at *4 (citing Wright, 554 F.3d at 274).  As plaintiff fails to show "a genuine issue of material fact that the protected conduct was a substantial or motivating factor in his discipline[,]" Graham, 89 F.3d at 81, plaintiff's retaliation claim against defendant, based on the destruction of legal materials, lacks merit, and dismissal is recommended.  Celotex Corp., 477 U.S. at 323.

### 2.  Verbal Threat

Plaintiff also claims that defendant threatened him in retaliation for his protected speech by stating "that if he []ever put his name on any grievance concerning him ripping out the pages, he would make sure that the plaintiff end[ed] up dead or in the Box."  Compl. at ¶ 449. Defendant denies threatening plaintiff or using any abusive language.  See Dkt. No. 58-6 ¶.

### a.  Adverse Action

In assessing adverse action, a Court is to "look[] to the specific circumstances in which retaliation claims arise."  Boley, 2022 WL 4589678, at *2 (quoting Hayes v. Dahlke, 976 F.3d 259, 272 (2d Cir. 2020)).  Moreover, "[h]ostile statements of prison guards, though made in connection with an inmate's exercise of free speech, do not presumptively violate the First Amendment."  Tirado v. Shutt, No. 13-CV-2848 (LTS/AJP), 2015 WL 4476027, at *5 (S.D.N.Y. July 22, 2015) (citing Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)).  "Though certain verbal threats may rise to the level of adverse actions, such threats are generally either quite specific or made on a repeated basis."  Id. (citing Hepworth v. Suffolk County, No. 2:02-CV-6473, 2006 WL 2844408, at *8-9 (E.D.N.Y. Sept. 29, 2006) (holding that "a reasonable jury could find that [correction officers] unconstitutionally retaliated against [inmate] for exercising his First Amendment" rights where there were "continued verbal threats" that the inmate would be

subjected to "another beating or be killed")); see, e.g., Bartley v. Collins, No. 95-CV-10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action").  "[T]he less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights."  Mateo, 682 F. Supp. 2d at 434 (citing Lunney v. Brureton, No. 04 Civ. 2438 (LAK/GWG), 2007 WL 1544629, at *19, *23 (holding that a threat stating, "if you don't stop writing grievances I'm going to break your fuckin' neck," was direct and specific enough to be adverse action)).  Thus, "[w]ithout evidence that an unnecessary statement by a prison guard contributed to some concrete threat to the prisoner's safety and welfare, the making of the statement does not rise to the level of First Amendment retaliation."  Davidson v. Bartholome, 460 F. Supp. 2d 436, 445 (S.D.N.Y. 2006) (citing Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001).  "Alternatively, 'a series of actions motivated by retaliation that are, collectively, sufficient to deter a person of ordinary firmness from exercising his First Amendment rights' can also rise to the level of adverse action."  Zielinski v. Annucci, 547 F. Supp. 3d 227, 233 n.2 (N.D.N.Y. 2021) (citing Tirado, 2015 WL 4476027, at *7).

Here, defendant's threat that plaintiff would "end up dead or in the Box" is vague and de minimis in nature, which reduces the deterrent effect considerably. Compl. ¶ 449; see Mateo, 682 F. Supp. 2d at 434 (citing Kemp v. LeClaire, No. 03-CV-8445, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007) (holding nonspecific verbal threats like "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" did not rise to the level of adverse action and insufficient to establish a First Amendment retaliation claim)).  Plaintiff does not content that the threat resulted in any physical injury, and, thus, is "exactly the type of threat[] that ha[s] been found to be insufficient to sustain a First Amendment claim."  Id. Although plaintiff was not deterred from grieving the alleged destruction of his legal materials, it is feasible of keeplock would "deter a similarly situated individual of ordinary firmness from submitting grievances or complaints."  Blount, 2022 WL 3109585, at *5 (citation omitted); Dkt.

18

No. 58-2 at 94-96.  However, "as a general matter, a single isolated threat to place an inmate in restrictive confinement for filing a grievance, without more, is not sufficient adverse action for purposes of a First Amendment retaliation claim[,]"  Sanchez v. Shanley, No. 9:20-CV-0648 (GTS/ML), 2021 WL 365912, at *3 (N.D.N.Y. Feb. 3, 2021) (citing cases).

Plaintiff does not contend that he was placed in keeplock confinement as a result of his interaction with defendant.  This isolated threat to place plaintiff in disciplinary confinement, unaccompanied with subsequent action – which also did not deter plaintiff from filing grievances, would be unlikely to deter a similarly-situated individual of ordinary firmness from exercising his constitutional rights, and, therefore does not suffice to amount to an adverse action.  See Hayes, 976 F.3d at 274; Gill, 389 F.3d at 381.

Accordingly, because plaintiff does not allege or support a claim that (1) he was reasonably deterred by defendant's nonspecific threats or that a similarly-situated person would be, or (2) that any injury or keeplock confinement resulted, defendant's alleged threat is insufficient to sustain a First Amendment retaliation claim, and it is recommended that the claim be dismissed.

### b.  Causal Connection

Even if the undersigned had determined that plaintiff demonstrated that defendant's threat amounted to an adverse action, plaintiff has not demonstrated there was an adequate causal connection between plaintiff's protected activity and defendant's alleged verbal threats.

Plaintiff has not proffered any evidence supporting a retaliatory motive on the part of defendant for the alleged verbal threats beyond stating that the alleged threat was "in retaliation for the plaintiff's protect[ed] activit[y]" of filing or attempting to file the amended complaint in his civil rights action.  Dkt. No. 34 at 8.  Not only does plaintiff fail to allege any adverse action stemming from defendant's alleged verbal threat, but plaintiff fails to allege any injury close in time to such alleged verbal threat.  Accordingly, plaintiff fails to demonstrate a causal connection.  In sum, as plaintiff has not demonstrated that the verbal threat amounted to an adverse action or demonstrate the existence of a causal connection between his protected

speech and the alleged threat, it is recommended that defendant's motion seeking to dismiss plaintiff's claim of retaliation on the basis of threats be granted.

### C.  Qualified Immunity

Defendant contends, in the alternative, that he is entitled to qualified immunity.  See Dkt. No. 58-7 at 15.  Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted); see also Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted).

As the undersigned concludes that, even when viewed in the light most favorable to plaintiff, he failed to demonstrate that defendant's conduct violated a constitutional right, the undersigned does not reach the question of qualified immunity.  See, e.g., Cucuta v. New York City, 25 F. Supp. 3d 400, 414 (S.D.N.Y. 2014) (noting that, where the plaintiff does not demonstrate a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity" because "where there is no viable constitutional claim, defendants have no need of an immunity shield.") (internal citations and quotation marks omitted).

### III.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 58) be **GRANTED**; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a). 6(e), 72.[7]

Dated: January 27, 2023
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[7] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday Id. § 6(a)(1)(c).