**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CARLTON WALKER,

                              Plaintiff,                      9:20-cv-0082
                                                                          (AMN/CFH)

v.

RICHARD SENECAL,

                              Defendant.

---

**APPEARANCES:**                                                  **OF COUNSEL:**

**CARLTON WALKER**
85-A-155920-82
Franklin Correctional Facility
P.O. Box 10
Malone, NY 12953
Plaintiff, *Pro Se*

**ATTORNEY GENERAL FOR THE**
**STATE OF NEW YORK**                                  **MARK G. MITCHELL, ESQ.**
The Capitol                                                            Assistant Attorney General
Albany, NY 12224-0341
Attorney for Defendant

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

On January 23, 2020, Plaintiff *pro se* Carlton Walker, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action pursuant to 42 U.S.C. § 1983, alleging various violations of his constitutional rights at DOCCS facilities, including Bare Hill Correctional Facility ("Bare Hill C.F."). *See* Dkt. No. 1 ("Complaint" or "Compl."). Plaintiff sought leave to proceed *in forma pauperis*, Dkt. No. 2, which was denied pursuant to the "three strikes" provision of 28 U.S.C. § 1915(g). *See* Dkt. No. 6.

Following an initial review of the Complaint, the Court dismissed all of the claims contained therein, except for the First Amendment retaliation claims against Corrections Officers Richard Senecal ("Senecal") and Brian Benware ("Benware") (collectively, the "Defendants"). *See* Dkt. No. 6. Defendants filed a motion to dismiss on September 25, 2020. *See* Dkt. No. 32. On July 19, 2021, Magistrate Judge Hummel issued a Report-Recommendation and Order ("July 19, 2021 Report-Recommendation"), recommending that Defendants' motion to dismiss be granted in part and denied in part. Dkt. No. 38. On August 26, 2021, the Court adopted the July 19, 2021 Report-Recommendation in its entirety. Dkt. No. 42. Consequently, the Court dismissed Plaintiff's (i) First Amendment retaliation claims against Senecal based on (a) missed meals, (b) access to the mess hall, (c) pat frisks, and (d) verbal harassment claims related to a diet card and recreation; and (ii) First Amendment retaliation claim against Benware. *See id.* Therefore, the only remaining claim in this action is Plaintiff's First Amendment retaliation claim against Senecal based on Senecal's alleged destruction of legal materials and verbal threat to Plaintiff. *Id.*

On May 27, 2022, Defendant Senecal filed a motion for summary judgment. Dkt. No. 58. Plaintiff filed his opposition on July 8, 2022, Dkt. No. 62, and Senecal filed a reply on July 29, 2022, Dkt. No. 63. On January 27, 2023, Magistrate Judge Hummel issued a Report-Recommendation and Order ("January 27, 2023 Report-Recommendation"), recommending that Senecal's motion for summary judgment be granted. Dkt. No. 67. Plaintiff filed a letter dated February 10, 2023, seeking an extension to file objections to the January 27, 2023 Report-Recommendation, *see* Dkt. No. 68, which the court granted on February 15, 2023, *see* Dkt. No. 69. Thereafter, Plaintiff timely submitted objections to the January 27, 2023 Report-

Recommendation,¹ *see* Dkt. No. 70, and Senecal filed a response on March 9, 2023, *see* Dkt. No. 71.

Currently before this Court is Magistrate Judge Hummel's January 27, 2023 Report-Recommendation, Plaintiff's objections thereto, and Defendant Senecal's response to Plaintiff's objections. Plaintiff objects to Magistrate Judge Hummel's recommendation that the Court grant Senecal's motion for summary judgment on a number of grounds.² *See* Dkt. No. 70. Senecal argues in response that (i) the Court should ignore Plaintiff's objections because his objections exceeded 25 pages in length; and (ii) Plaintiff's objections "largely reiterate[] the arguments" made in his opposition to Senecal's motion for summary judgment.³ Dkt. No. 71.

For the reasons stated herein, the Court adopts the recommendation in the January 27, 2023 Report-Recommendation, and orders that Defendant Senecal's motion for summary judgment is granted.

---

¹ In the future, Plaintiff is cautioned to comply with Local Rule 7.1(b)(1), which provides, "[n]o party shall file or serve a memorandum of law that exceeds twenty-five (25) pages in length, double-spaced, unless that party obtains leave of the judge hearing the motion prior to filing." Plaintiff's objections, while hand-written, exceed this page limit and Plaintiff failed to obtain leave of the Court before filing.

² Broadly construing Plaintiff's objections, he principally objects to Magistrate Judge Hummel's analysis of the second and third prongs of the three-part test required to establish a First Amendment retaliation claim under 42 U.S.C. § 1983. Plaintiff also asserts various other arguments that are wholly unrelated to the analysis contained in the January 27, 2023 Report-Recommendation. To the extent that these additional arguments can be construed as objections to the January 27, 2023 Report-Recommendation, such objections merely reiterate allegations made in the Complaint, or are conclusory. Accordingly, the Court has reviewed the remainder of the January 27, 2023 Report-Recommendation for clear error and found none.

³ The Court disagrees with Senecal's position that all of Plaintiff's objections largely reiterate arguments raised in the opposition to the summary judgment motion. Given Plaintiff's *pro se* status and the special solicitude afforded therewith, the Court finds that Plaintiff identified specific portions of the January 27, 2023 Report-Recommendation that he contends are erroneous and has provided bases for his contentions. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) ("[W]e liberally construe [submissions] by pro se litigants, reading such submissions to raise the strongest arguments they suggest.") (quotation marks omitted).

## II.     BACKGROUND[4]

Plaintiff's allegations against Defendant Senecal stem from a single encounter by the entrance of the mess hall at Bare Hill C.F. on an unspecified date in September 2017. *See* Compl. at ¶ 435. Plaintiff alleges that he was carrying a "big stack" of legal materials in a net bag to the mess hall, at which point, Senecal, who was standing by the entrance of the mess hall, read through these legal materials to see if Plaintiff had another inmate's legal materials in his possession. *Id.* at ¶¶ 435, 437. According to Plaintiff, while Senecal was reading through the legal materials, he came across Plaintiff's "Civil Rights Complaint, which was pending in the United States District Court, Northern District of New York, before Hon. Thomas McAvoy, Senior United States District Judge," *id.* at ¶ 439, challenging the prison conditions and advancing an "innocence" claim, Dkt. No. 58-2 at 66, 72. Senecal proceeded to "rip[] out the first 18 Pages of the Plaintiff's 88 page[] Civil Rights Complaint, in which Acting Commissioner Annucci, and Superintendent Yelich are named defendants, challenging the prison's condition as unconstitutional, including the Messhall (sic), a post which Officer Senecal works." Compl. at ¶ 440. Plaintiff testified that the document Senecal allegedly partially destroyed was an amended complaint that he intended to file in a case pending before Judge McAvoy in this district.[5] Dkt. No. 58-2 at 72-73, 75. Plaintiff further testified that because Senecal ripped out the "first 18 Pages of [his] . . . Civil Rights Complaint," his complaint was "invalidated" and "cost [him his case]." Compl. at ¶ 440; *see* Dkt. No. 58-2 at

---

[4] Plaintiff's factual allegations are detailed in the January 27, 2023 Report-Recommendation. *See* Dkt. No. 67 at 2-4. The Court has only included herein the relevant factual allegations necessary for its *de novo* review of the portions of the Report-Recommendation to which Plaintiff has specifically objected.

[5] On September 11, 2017, Plaintiff filed an 88-page amended complaint in the case *Walker v. Cuomo et al.*, 9:17-cv-00650, which is the only action brought by Plaintiff over which Judge McAvoy presided. That action was ultimately dismissed without prejudice for Plaintiff's failure to pay the filing fee.

73, 106-107. During the alleged destruction of the legal materials, Plaintiff informed Senecal that he intended to file a grievance "about the fact that [Senecal] ripped out Page 1 through 18 of [Plaintiff's] 88 Pages (sic) Civil Rights Complaint," to which Senecal allegedly responded by saying that if Plaintiff ever put his name on any grievances stating that Senecal ripped out those 18 pages, he would make sure that Plaintiff would "end up dead or in the Box."[6] *See* Compl. at ¶ 449. Plaintiff also testified that he filed a grievance regarding Senecal's verbal threat and destruction of legal materials. Dkt. No. 58-2 at 94-96.

## III.   STANDARD OF REVIEW

### A.  Summary Judgment

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). "The 'mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.'" *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (emphasis in original). In other words, "a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (quotation omitted). Moreover, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *See Chambers*, 43 F.3d at 36-37 (quotation and citation omitted). Any assessments of credibility and all choices between available

---

[6] The Court understands the "Box" to mean keeplock confinement. *See* Dkt. No. 58-2 at 95-96 (explaining that the "Box" is synonymous with the Special Housing Unit).

inferences are matters to be left for a jury, not matters to be decided by the Court on summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (citing Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable factual inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing, *inter alia*, *Anderson*, 477 U.S. at 255). Where a party is proceeding *pro se*, like here, the court must "read his supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). "However, a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### B. Review of a Report-Recommendation

A district court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.'" *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). When a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322 (TJM)(DRH), 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to

6

which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim).

"[I]n a *pro se* case, like here, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal . . . ." *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB)(JCF), 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 1:22-cv-567 (BKS/CFH), 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1)(C).

## IV. DISCUSSION

Plaintiff has specifically and timely objected to Magistrate Judge Hummel's recommendation that Defendant Senecal's motion for summary judgment on Plaintiff's First Amendment claim be granted. Thus, the court reviews this recommendation *de novo*. Because Plaintiff's First Amendment retaliation claim against Senecal based on the alleged destruction of legal materials and verbal threat fails as a matter of law, the Court adopts Magistrate Judge Hummel's recommendation to grant Senecal's motion for summary judgment. Plaintiff's claim

fails as a matter of law because he cannot establish—even if true—that Senecal's destruction of legal materials and verbal threat falls within the ambit of actionable First Amendment retaliation.

"To prevail on a First Amendment retaliation claim, an inmate must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action." *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (internal quotation marks and citations omitted). That is, to defeat summary judgment, Plaintiff "bears the burden of showing, first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, [courts] are careful to require non-conclusory allegations." *Id.* (internal quotation marks omitted). Therefore, courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citations omitted).

### a. Destruction of Legal Materials

Plaintiff alleges that Senecal destroyed a portion of his legal materials—18 pages of a federal civil rights complaint—because Plaintiff intended to pursue a lawsuit challenging, among other things, the conditions at Bare Hill C.F.[7] Compl. at ¶ 440. To start, there is no dispute that

---

[7] During his deposition, Plaintiff offered an alternative reason for Senecal's alleged destruction of his legal materials. Specifically, he testified that while Senecal was allegedly destroying his legal materials, Senecal stated that Plaintiff should not be using the prison law library to work on his

8

Plaintiff's federal civil rights complaint challenging, among other things, prison conditions constitutes protected speech. Prisoners have a right to petition the government for redress of grievances, and prison officials may not retaliate against inmates for exercising that right. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citation omitted). The right to petition the government for redress of grievances includes the right to file lawsuits as well as the right to pursue administrative grievances. *See Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988). Thus, Plaintiff has satisfied the first prong necessary to establish a retaliation claim under 42 U.S.C. § 1983. *See Hayes*, 976 F.3d at 272.

As to the second prong, even if true, Senecal's alleged destruction of 18 pages of Plaintiff's federal civil rights draft amended complaint does not rise to the level of an adverse action. To be an "adverse action," retaliatory conduct must be the type that would deter "a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis,* 320 F.3d at 353 (internal quotation marks and citations omitted). "[T]his objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004). Courts "look to the specific circumstances in which retaliation claims arise, 'bearing in mind that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse.'" *Hayes*, 976 F.3d at 272 (quoting *Davis*, 320 F.3d at 353) (internal quotation marks and alterations omitted).

Retaliatory destruction of a prisoner's personal property can qualify as an adverse action when there is at least a "substantial amount" of personal property destroyed. *See Smith v. City of*

---

own civil rights lawsuit because as an employee of the law library Plaintiff is only supposed to assist other inmates with their legal issues. *See* Dkt. No. 58-2 at 76-80.

*New York*, No. 03-CV-7576(NRB), 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (finding adverse action where the defendant was missing "nine hundred dollars' worth of personal property" and a "substantial amount of his legal materials from his cell and locker," including criminal case materials such as motions drafted by defendant's attorney and grand jury minutes, as well as civil case materials including copies of his complaints in the actions, docket sheets, a *pro se* book, a jailhouse lawyer's manual, and various motions).  However, destruction of an inmate's property is not actionable where it is merely a *de minimis* act of retaliation.  *See Davis v. Jackson*, 15-CV-5359, 2018 WL 358089, at *11 (S.D.N.Y. Jan. 8, 2018) ("The one-time taking of Plaintiff's belt [was] a de minimis action and does not constitute an adverse action."); *Fann v. Arnold*, No. 14-CV-6187, 2016 WL 2858927, at *2 (W.D.N.Y. May 16, 2016) (holding that the plaintiff's allegation of property destruction "constitute[d] a *de minimis* act of retaliation" where the plaintiff had alleged that "all of his property was thrown in the shower").  *De minimis* acts of retaliation do not chill the exercise of constitutional rights and are insufficient to support a First Amendment retaliation claim.  *See Davidson v. Chestnut*, 193 F .3d 144, 150-51 (2d Cir. 1999).

The Court recognizes the effort required for an inmate to author a civil rights complaint, however, even with this recognition, the Court finds that the destruction of 18 pages of Plaintiff's draft amended complaint is *de minimis*.  Apparently, Plaintiff was not deterred from filing his 88-page amended complaint, and the Court thinks it equally unlikely that an "individual of ordinary firmness" would have been deterred.  *Davis,* 320 F.3d at 353.  Therefore, because there is no legally cognizable adverse action, Plaintiff's First Amendment retaliation claim based on the alleged destruction of legal materials fails.

b. **Verbal Threat**

Plaintiff's First Amendment retaliation claim based on Defendant Senecal's alleged verbal threat fares no better. Plaintiff contends that Senecal stated that he would make sure that Plaintiff would "end up dead or in the Box" if Plaintiff filed a grievance against him based on the alleged destruction of Plaintiff's legal materials. Compl. at ¶ 449. Because the filing of a grievance is protected speech, the first prong of the three-part test necessary to establish a retaliation claim under 42 U.S.C. § 1983 is met. *See Hayes*, 976 F.3d at 272.

However, with respect to the second prong, Plaintiff cannot establish that the alleged verbal threat constitutes an adverse action. When asserting a retaliation claim, "[a]n inmate has no right to redress simply because an officer made a hostile or derogatory comment about him." *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 373 (S.D.N.Y. 2011) (quotation marks, alteration, and citation omitted). The line between a *de minimis* verbal threat and a retaliatory adverse action hinges on the specificity and seriousness of the words used. *See Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) ("The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights.").

For purposes of this analysis, the Court analyzes the alleged threat that Plaintiff "would end up dead" separately from the threat to place him in keeplock confinement. Starting with Senecal's alleged threat that Plaintiff would end up dead, the Court finds that this threat is insufficiently direct and specific to constitute an adverse action. Although there is no Second Circuit case directly on point,[8] district courts within the Second Circuit have found that similar

---

[8] In *Hayes v. Dahlke*, the Second Circuit held that a verbal threat such as "maybe all of this would go away" if the Plaintiff stopped filing grievances was *de minimis* and did not constitute an adverse action. 976 F.3d at 266. In *Ford v. Palmer*, the Second Circuit found that the plaintiff had plead facts sufficient to establish that a verbal threat constituted an adverse action when he alleged that "the plaintiff was threaten (sic) by C.O. Law defendant, to put some kind of substance in plaintiff's

11

threats do not constitute an adverse action. *See, e.g., Moreau v. Ellsworth,* 9:20-CV-124 (DNH/ATB*)*, 2021 WL 3813172, at *11 (N.D.N.Y. July 15, 2021) (threat to "break plaintiff's neck if he saw [him] close [to] the Grievance Office" not an adverse action); *Tutora v. Gessner,* No. 17-CV-9517 (KMK), 2019 WL 1382812, at *7 (S.D.N.Y. Mar. 27, 2019) (finding threat of "I have a 16 inch rope with your name on it. I was a slave owner for Halloween" to be insufficiently specific, direct and detailed enough to state a First Amendment claim based on a verbal threat); *Terry v. Hulse,* No. 16-CV-252 (KMK), 2018 WL 4682784, at *11 (S.D.N.Y. Sept. 28, 2018) (granting summary judgment in an action where corrections officers allegedly threatened to "kill" plaintiff if he didn't drop the lawsuit); *Barnes v. Cnty. of Monroe*, 85 F. Supp. 3d 696, 740 (W.D.N.Y. 2015) (find that a threat to kill without any specifics is too general and not an adverse action); *Barrington v. New York*, 806 F. Supp. 2d 730, 746 (S.D.N.Y. 2011) (threat of "me and my boys . . . going to get you while brandishing a copy of the grievance" not an adverse action); *Kemp v. LeClaire*, No. 03-CV-844S, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007) (threats like "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" are not adverse actions); *Bartley v. Collins*, No. 95 Civ. 10161 (RJH), 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action."); *Alicea v. Howell,* 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) ("alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance" not adverse action). *C.f. Quezada v. Roy*, No. 14 CIV. 4056 CM, 2015 WL 5970355, at *23 (S.D.N.Y. Oct. 13, 2015) (denying summary judgment in an action where a corrections officer threated to kill plaintiff by

---

hot water for writing compliance (sic) and grievances." 539 Fed. Appx. 5 (2d Cir. 2013). Neither *Hayes* nor *Ford* is on point here.

12

allegedly stating "[y]ou get on my nerves and I will do something to put you out of circulation"); *Vincent v. Sitnewski,* F. Supp. 3d 329, 339-40 (S.D.N.Y. 2015) (denying summary judgment in an action where a corrections officer threated to "jump" plaintiff in his cell); *Lunney v. Brureton*, No. 04 CIV. 2438 (LAK/GWG), 2007 WL 1544629, at *23 (S.D.N.Y. May 29, 2007), objections overruled, No. 04 CIV. 2438(LAK), 2007 WL 2050301 (S.D.N.Y. July 18, 2007) (verbal threat of "if you don't stop writing grievances I'm going to break your fuckin' neck" constituted an adverse action). Moreover, unlike the threat in *Ford v. Palmer*, the vagueness of the alleged threat in this action did not "enhance[] its effectiveness as a threat." 539 Fed. Appx. at 5 (reasoning that "not telling Ford when or how Officer Law planned to poison him" could have enhanced its effectiveness as a threat and increased the likelihood that a person of ordinary firmness would be deterred from filing additional grievances").

Turning to Senecal's alleged threat to place Plaintiff in keeplock confinement, this threat does not amount to an adverse action either. "As a general matter, a single isolated threat to place an inmate in restrictive confinement for filing a grievance, without more, is not sufficient adverse action for purposes of a First Amendment retaliation claim[.]" *Sanchez v. Shanley*, No. 9:20-CV-0648 (GTS/ML), 2021 WL 365912, at *3 (N.D.N.Y. Feb. 3, 2021) (citing cases). Plaintiff does not contend that he was placed in keeplock confinement as a result of this interaction with Senecal. Therefore, this isolated threat to place plaintiff in keeplock confinement, unaccompanied by subsequent action, does not amount to an adverse action. *See Wellington v. Langendorf,* No. 12-CV-1019 (FJS/DEP), 2013 WL 3753978, at *11 (N.D.N.Y. July 15, 2013) (finding no adverse action where the defendant made a vague verbal threat on one occasion, and did not repeat the threat or take any affirmative action to suggest that she would do anything to act on the threat); *Keitt v. New York State Dep't of Corr. and Cmty. Supervision,* No. 11-CV-0855 (LJV/MJR), 2017

WL 9471826, at *10 (W.D.N.Y. Jan. 4, 2017) (finding that an isolated threat to file a misbehavior report did not constitute an adverse action where the defendant never carried out that threat).

In summary, the Court adopts the Magistrate Judge's recommendation that Defendant Senecal's motion for summary judgment be granted because Plaintiff cannot show that Defendant Senecal's alleged actions constitute adverse action, which is necessary to prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983.

## V.     CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the recommendation in the January 27, 2023 Report-Recommendation, Dkt. No. 67, is **ADOPTED** for the reasons stated herein; and the Court further

**ORDERS** that the Defendant's motion for summary judgment, Dkt. No. 58, is **GRANTED**; and the Court further

**ORDERS** that the Clerk shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 24, 2023
       Albany, New York

Anne M. Nardacci
U.S. District Judge